IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ERIC WITHERSPOON<br>PETITIONER,<br><br>VS.<br><br>LOIS RUSSO,<br>SUPERINTENDENT, AND<br>M. JANE BRADY,<br>ATTORNEY GENERAL for the STATE<br>of DELAWARE,<br>RESPONDENTS. | )<br>)<br>)<br>)<br>)<br>) Civ. Act. No. 04-1424-JJF<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |

FILED
JUN 27 2005
U.S. DISTRICT COURT
DISTRICT OF DELAWARE

## REPLY

The Petitioner, Eric Witherspoon, state the following in response to the respondents answer to Petitioners Writ of Habeas Corpus.

## FACTS

On April of 1998 Pursuant to the ("IAD"), Interstate Agreement on Detanies Witherspoon, was extradited from the Commonwealth of Massachusetts, to the State of Delaware to answer the following charges: Murder 2nd Degree; Reckless Endangering 1st Degree and Two (2), Firearm Offenses. Witherspoon was tried before a jury, in a trial lasting a little over a week in February-March of 1999. Witherspoon was found guilty of the lesser included, Manslaughter with respect to the Murder charge and found guilty of the remaining offenses. Witherspoon was sentenced to 17 years in prison for the following charges stated above and his

17 year sentence was to run consecutive to his Massachusetts sentence Witherspoon, was then extradited back to the Commonwealth of Massachusetts on or about October 1999, Pursuant to the IAD.

Sometime during the month of May 2000, Witherspoon, received an opening brief and appendix in the mail which forwarded from a one Mr. Bernard J. O'Donnell, Esquire, Appellate Attorney for the Public Defenders office for the State of Delaware. Included was a letter informing Witherspoon, that [he], Mr. O'Donnell was Witherspoon's, Appellate Attorney and that the following brief that's being forwarded has been filed within the Delaware Supreme Court on Witherspoon's, behalf. Prior to that letter Witherspoon, had never communicated with Mr. O'Donnell, in any way nor did Witherspoon, consent to the opening brief that was filed arguing his direct appeal.

On May 31, 2000, Witherspoon, forwarded a letter of his own to Mr. O'Donnell, informing him to disregard the brief that he filed without his consent. Mr. O'Donnell then forwarded an asinine letter dated June 22, 2000 informing Witherspoon, that "the Attorney must decide what arguments should be made on appeal and how the arguments are made." (EX-A).

Witherspoon's, direct appeal was submitted on November 28, 2000 in the Delaware Supreme Court by Mr. O'Donnell, Esquire.

On May 22, 2001 Witherspoon's, convictions were affirmed by the Delaware Supreme Court.

Witherspoon's, limitations clock began to run on August 21, 2001 the date on which Witherspoon's, convictions became final upon the expiration of the time for seeking direct review within the meaning of § 2244(d)(1)(A).

soon after Witherspoon's, conviction was affirmed on direct appeal Witherspoon, requested from the Massachusetts prison officials the following material so that he could prepare a motion for a new trial Pro Se: (i.e., Delaware Rules Annotated; Delaware Code Annotated; Atlantic Reporters with published opinions for the State of Delaware and a copy of the Delaware Appellate Handbook.)

    Witherspoon, first requested the appeal research material as detailed above from the director of treatment Anthony Mendonsa, who then sent Witherspoon, to speak with the Director of Operations who inturn sent Witherspoon, to speak with the Superintendent. Who then sent Witherspoon, right back to the Director of Treatment. By this time nearly (2) two months had elapsed.

    Witherspoon, realizing that the Massachusetts prison officials were refusing to help him by not providing him with any of the material that was requested or by providing him with a person trained in law or Counsel. Witherspoon, then forwarded a letter to Mr. O'Donnell, his previous appellate attorney explaining his position and requested that the State of Delaware forward to him the appellate material that he was seeking. Witherspoon, then forwarded (2) two additional letters to Mr. O'Donnell, dated September 4, 2001 and September 7, 2001, requesting legal materials. See, (EX-B-three pages.) Responses from Mr. O'Donnell, answering Witherspoon's, requests. However, the material that Mr. O'Donnell, did forward to Witherspoon, was not enough appellate material for Witherspoon, to properly prepare his motion for a new trial Pursuant to Rule (61).

Witherspoon, deligently sought help by both the Commonwealth of Massachusetts and the State of Delaware requesting that they both please provide him with the necessary legal material so that he could attack his conviction collaterally both States declined to help Witherspoon, Both States pointed the finger at the other claiming its the other States obligation to ensure Witherspoon's Constitutional right to access the Delaware Court Witherspoon, obviously was left to fend for himself by both States.

When Witherspoon, finally secured an outside source to fund some of the research material (11), months had elapsed on his one year expiration date for seeking review within the meaning of § 2244(d)(1)(A).

Witherspoon, filed his postconviction motion Pursuant to Rule 61(b), on July 12, 2002. (Super.Ct.ID.No.960003447--Item 96). The motion was dismissed without prejudice because it was ruled improperly filed. The motion was improperly filed because Witherspoon, did not have all of the Delaware Superior Court Rules because again he is an indigent inmate and both States declined to provide him with the legal material that was requested as stated above and his outside source did not have the funds to provide him with everything that he needed which the Constitution requires all inmates access to the courts.

However, when Witherspoon, refiled the motion for a new trial on August 5, 2002. Witherspoon, had exactly (15), days left on his one year expiration date Pursuant to § 2244(d)(1)(A).

4

After receiving the State's response, the Superior Court denied Witherspoon's, request for post-conviction relief and also denied Witherspoon's, request for counsel. State V. Witherspoon, ID No. 960003447, 2003 WL 357855 (Del. Super. Ct. Jan. 31, 2003).

Witherspoon, appealed to the Delaware Supreme Court on February 12, 2002 along with Witherspoon's notice of appeal filed with the Delaware Supreme Court he filed an attached letter putting the Court on notice that he was an indigent inmate that was currently being housed in a prison within the Commonwealth of Massachusetts without the assistance of counsel and without any Delaware case law.

The Delaware Supreme Court forwarded an order to Witherspoon, informing him that his opening brief and appendix were due on or before April 14, 2003.

Witherspoon, then forwarded a letter dated March 13, 2003 to the Delaware Supreme Court informing it that Unlike, the Rule (61), motion he submitted he had <u>no</u> outside resource to fund the research material required to enable him to prepare and present to the court a brief by April 14, 2003 or in furtherance to that date. The Delaware Supreme Court then issued and forwarded an order dated March 28, 2003 to Witherspoon, stating "the court having recieved appellants first motion under Rule 15(b), filed March 13, 2003, requesting an extension of time from April 14, 2003 to file the opening brief and appendix in this matter. Witherspoon, never filed a motion Pursuant to Rule 15(b) because Witherspoon dont know what Rule 15(b) is Again Witherspoon does not have any Supreme Court rules in Massachusetts. <u>See</u>, Respondents filing of State Court records dated May 17, 2005 letter A.

Witherspoon, found himself in the same situation all over again as detailed above he didn't have counsel or any legal material to prepare his opening brief. Witherspoon went back to speak with the prison officials where he was being housed at in Massachusetts and requested again from them that they please help him by providing him with the Delaware legal material as detailed above so that this time he could prepare an opening brief to submit to the Delaware Supreme Court which they denied Witherspoon's request.

Witherspoon, then proceeded by filing the proper institutional grievances and grievance appeals which was all denied. Witherspoon then filed a motion for the Delaware Supreme Court to appoint counsel along with an affidavit putting the Supreme Court on notice that I was still being denied access to the Delaware Courts. The motion was denied by order. Then Witherspoon wrote the Chief Justice Veasey on many occassions pleading for help but got none. Witherspoon's brief was ruled delinquent and his appeal was dismissed for failure to prosecute. Witherspoon V. State, No. 113, 2003, 2003 WL 22372947 (Del. Oct. 1, 2003). Witherspoon's Federal Habeas Petition is dated October 31, 2004.

## Discussion

Respondents argue in their answer to Witherspoon's petition that Witherspoon's petition should be dismissed because Witherspoon, petition is filed well beyond the one year period allowed by § 2244(d)(1), it follows that the petition is untimely under §2244 (d).

Witherspoon, concedes to the Respondents argument that his petition is filed well beyond the one year period by § 2244(d)(1), in sum nearly two years elapsed to which Witherspoon, filed his petition.

However, this concession, is not without legal bearing which allows for this Court to exercise its authority in deciding the merits of Witherspoon's petition.

First, in retrospect, for lack of a better word Witherspoon, was doomed from the start his direct appeal was filed without his consent by appellate attorney Bernard J. O'Donnell, See, petitioners (EX-A). The state supreme court affirmed. Witherspoon V. State, No. 460, 1999, 2001 WL 138499 (Del. May 22, 2001).

Witherspoon's appellate counsel was Constitutionally ineffective in failing to raise on appeal meritorious claims that were preserved by trial counsel mainly the Rule 29(C) motion and Rule 33 motion in favor of one less worthy claim, there was no conceivable strategic reason to drop the other issues on appeal. There was a "reasonable probability" that if appellate counsel would have raised the more stronger claims on appeal that the outcome of Witherspoon's direct appeal would have been different. Lattimore v. Dubois 152 F.Supp.2d 67 (D.Mass. 2001).

Applicable Law, In Evitts v. Lucey, the Supreme Court held that the Due Process Clause of the Fourteenth Amendment quarantees to state criminal defendants the right to receive effective assistance of counsel on their first appeals of right from state court convictions. 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) ("the right to effective assistance of counsel is not

confined to trial, but extends also to the first appeal as of right"). However, the Evitts, court did not determine the appropriate standard to be applied because the parties stipulated to the fact that counsel in that case was ineffective. Evitts, 469 U.S. at 392, 105 S.Ct. 830. Subsequently, the Supreme Court applied the now familiar framework enunciated in Strickland, to claims of ineffective assistance of appellate counsel. See Smith v. Murray, 477 U.S. 527, 535-36, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (first applying Strickland to claim of attorney error on appeal); accord Smith v. Robbins, 528 U.S. 259, 284 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (the proper standard for evaluating claim that appellate counsel was ineffective in neglecting to file a merits brief is that enunciated under Strickland). Thus, to prevail on a claim of ineffective assistance, petitioner must show that appellate counsel's performance was both deficient and prejudicial to his defense. Strickland, 466 U.S. at 686, 104 S.Ct. 2052.

Deficient performance is representation that falls below an objective standard of reasonableness under prevailing professional norms when considering all the circumstances. Strickland, 466 U.S. at 688, 104 S.Ct 2052. As there are "countless ways to provide effective assistance in any given case," courts should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id at 689, 104 S.Ct. 2052. To overcome this presumption, the petitioner must present evidence that appellate counsel's failure to raise a claim was not an exercise of "sound appellate stragety." Sidebottom v. Delo, 46 F.3d 744, 759 (8th Cir. 1995).

Plainly, sound representation does not mean that appellate counsel raise every colorable issue. To the contrary, " 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. at 536, 106 S.Ct. 2661 (quoting Jones v. Barnes, 436 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)).

The critical issue is whether that presumption is overcome when counsel omits issues that are considerably stronger than those presented. See Smith v. Robbins, 528 U.S. at 288, 120 S.Ct. 746 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)) ("Generaly, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome"); See also Clemmons v. Delo, 124 F.3d 944 (8th Cir. 1997) (an attorney who has presented strong but unsuccessful claims on appeal may nonetheless deliver a deficient performance and prejudice a defendant by omitting a "dead-bang winner" on appeal, i.e., an issue obvious from the trial record which would likely have impacted the outcome of the appeal had it been raised); United States v. Butler, 1999 WL 25555, at *2 (table) (4th Cir. 1999) (citing Kelly v. United States, 29 F.3d 1107, 1112 (7th Cir. 1994) (performance falls beneath objective standards of reasonableness when appellate counsel neglects to raise an issue that is both "obvious" and "significant")); Mayo v. Henderson, 13 F.3d 528, 533 (2nd Cir. 1994) (noting that acounsel's pursuit of weaker rather than stronger claims on appeal may constitute ineffective

assistance of appellate counsel when the attorney failed to raise a substantial claim but instead raised a weaker one); Matire v. Wainwright 811 F.2d 1430, 1438 (11th Cir. 1987) (appellate counsel may be ineffective where the trial error is obvious from the record and "must have leaped out upon even a casual reading of the transcript").

Appellate Counsel inexplicably ignored significant and obvious issues that were preserved by Witherspoon's, Trial Counsel mainly the Rule 29(c) and 33 claims: (a) Trial Court committed error by proceeding on the indictment for manslaughter with respect to indirect caustion, whereby state law did not provide for such causation; (b) Counsel failed to raise and argue on appeal the claim of prosecutorial misconduct; (c) Counsel failed to raise and argue on appeal the claim that trial judge erred by instructing on manslaughter; (d) Counsel failed to raise and argue on appeal the imposition of consecutive sentences; and (e) Failed to raise and argue on appeal trial court's error in failing to consider the cumulative effect of all the trial errors. Appellate Counsel was also ineffective in that upon even a casual reading of the transcript he would of obviously realized the following issues that Witherspoon discoverd: (1) Trial Counsel failed to file a motion to compel the state to provide defendant with all exculpatory and impeachment evidence; (2) Trial Counsel failed to request a contiuance to investigate witness revelations that were not previously known to the defense; (3) Trial Counsel failed to file a motion seeking compliance with Superior Court Criminal Rule 26.2 (A)-(F)(1)(2); (4) Trial Counsel failed to move for mistrial based on witness revelations in open court;

(5) The State nondisclosure of specific requested exculpatory material evidence and potential exculpatory and impeachment evidence prejudiced the trial; (6) Trial Counsel failed raise the issue of prosecutorial misconduct; (7) Trial Counsel should have requested judicial immunity for a witness to secure exculpatory testimony; (8) Trial Counsels failure to investigate and interview witnesses prior to trial probably led to Witherspoon's convictions; (9) Trial Court erred by instructing the jury on the lesser charge of manslaughter over the defense objection; and (10) The trial Court's instruction on the elements of manslaughter and the state's burden of proof were defective.

    Rather, Witherspoon's appellate counsel chose to raise the following far weaker claim: (1) That the trial Court should have instructed on the lesser included offense of criminally negligent homicide. In sum, direct appeal Counsel's failure to raise, brief an argue meritorious issues which had been preserved at trial contravened defendant specific request were unreasonable and cannot forever foreclose appellate review of those claims Barnes v. Jones, 103 S.Ct. 3308 (1983). Moreover, common [law] dictates that Witherspoon, first raise all claims in State Courts before he can take the avenue of asserting any Constitutional violations Pursuant a petition Under 28 U.S.C. § 2254 for a writ of habeaus corpus by a person in State custody. That's why Witherspoon, so deligently requested that both the Commonwealth of Massachusetts along with the State of Delaware provide him with the research material so he could prepare his motion for a new trial Pursuant to Rule 61. However, both States declined to help and again Witherspoon, was left to fend for himself.

Additionally, the one-year period of limitation may be equitably tolled. See e.g., Fahy, 240 F.3d at 244; Jones, 195 F.3d at 159; Miller v. New Jersey State Dep't of Corr., 145 F.3d 616, 618 (3d Cir. 1998). Equitable tolling applies: only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

Miller, 145 F.3d at 618-19 (citation omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some eextraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." Jones, 195 F.3d at 159 (quoting United States v. Midgley, 142 F.3d 174, 179 (3rd Cir. 1998)).

In the case at bar, this Court should rule that equitable tolling is applicable in this setting, Witherspoon's, one-year limitations clock should be tolled on August 21, 2001 the date on which Witherspoon's, convictions became final upon expiration of the time for seeking direct review within the meaning of § 2244 (d)(1)(A).

Here's why, following Witherspoon's conviction he was extradited back to the Commonwealth of Massachusetts which is the sending State Pursuant to the Interstate Agreement on Detaines (IAD), on October 1999.

12

Following Witherspoon's, direct appeal being affirmed he immediately went to the prison law library to start doing the research so that he could submit his post-conviction motion for a new trial but to his discovery he discovered that the prison law library CD-ROM computer system did not contain any of the following material (i.e., Delaware Rules Annotated; Delaware Code Annotated; Atlantic reporters with published opinions for the State of Delaware; and a copy of the Delaware Appellate Hanbook). Thereafter, Witherspoon, then forwarded (3) three seperate letters to appellate attorney Mr. O'Donnell requesting legal materials. See, (EX-B-three pages), counsel forwarded Witherspoon, a few items that were requested which were a few Delaware Codes that appellate counsel made reference to in Witherspoon's, direct appeal brief. Mr. O'Donnell in his letters made references that the public defenders office no longer represented Witherspoon, and that his office could no longer send witherspoon anything and that Massachusetts has the obligation of ensuring my access to the Delaware Courts.

    Witherspoon, then spoke with the prison officials in Massachusetts where he was and still is being housed and requested that they provide him with necessary legal appeal research material which the Massachusetts officials denied this request on many different occasions. Witherspoon, actively sought legal assistance through both the Commonwealth of Massachusetts and the State of Delaware however, Witherspoon was slipping through the cracks of the system through no fault of his own because his one-year time limitation clock was still running.

Witherspoon's, right to access to the courts does not befall upon just one state when the situation, as it does here, involve two states colligated by an interstate agreement on detainers (IAD). In this circumstance the obligation becomes the responsibility of both states See e.g., Rich v. Zitnay, 644 F.2d 41, n.1 (1981). ("receiving as well as sending officials share responsibility for ensuring prisoners access to the courts"). (emphasis added).

In Hannon v. Allen, 241 F.Supp. 2d 71, 74 (D.Mass 2003). The District Court held that "It is undisputed that inmates have a fundamental constitutional right of access to the courts." Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986). There are several alternate, constitutionally acceptable methods to assure meaningful access to the courts. See Bounds v. Smith, 430 U.S. 817, 830, 97 S.Ct. 1491 (1977); Carter, 786 F.2d at 435. Two customary methods are providing prisoners with access to law libraries or access to legal assistance. A prison need not provide both; either one can be sufficient. See Blake v. Berman, 877 F.2d 145, 146 (1st Cir. 1989).

In the case at bar, Witherspoon, was provided with neither by both the Commonwealth of Massachusetts and the State of Delaware. The suggestion that Witherspoon, should have, or even could have, manufactured a Rule 61 Post-conviction motion without an adequate law library or adequate assistance from persons trained in law cannot stand up to legacy of Bounds, Supra, at 828.

Witherspoon, Then contacted his outside source who consisted of a family member and explained his current situation and Witherspoon, requested that this family member please help him.

14

Witherspoon, is an indigent prisoner and his family members are very poor but they chose to make the sacrafice concerning their living conditions so that they could provide Witherspoon, with very little money to purchase very little research material so that Witherspoon, could prepare his motion for a new trial.

However, by the time Witherspoon's, family could save enough money to purchase what little material they could provide and Witherspoon, finally being able to properly prepare the Rule 61 motion and file it over (11) eleven months had elapsed on his one-year limitations clock. The first motion for a new trial Pursuant to rule 61 that Witherspoon, filed in the Delaware Superior Court is dated July 12, 2002. However, the Delaware Superior Court ruled that Witherspoon's motion was untimely under Rule 33 and dismissed the motion without prejudice.

Witherspoon, then refiled the motion on August 5, 2002. This time the motion was accepted and filed by the Delaware Superior Court by this time Witherspoon, now had [Fifteen] days left on his one-year limitations period.

Witherspoon, argues that due to the facts of his case equitable tolling is applicable and would be appropriate in this setting because (1) because the Respondents in both State's misled the petitioner by claiming and pointing the finger at the other on who has the responsibility on ensuring petitioner's access to Court request and both States did nothing to ensure this right. (2) The petitioner was denied access to the Courts by both States by this denial by the time Witherspoon could file his motion for

a new trial Pursuant to Rule 61 he only had [Fifteen] days left on his one-year limitations period. Miller, 145 F.3d at 618-19.

Witherspoon, further argues that if his one-year limitation period is not equitably tolled under the circumstances of this case it would be a miscarriage of justice Witherspoon's limitation period should be tolled on August 21, 2001 the date his conviction became final upon expiration of the time for seeking direct review.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus should be granted.


Respectfully Submitted
By the Petitioner

*[signature]*

Eric Witherspoon, Pro Se
Souza Baranowski Corr. Cntr
Post Office Box 8000
Shirley, MA 01464

Dated: 6-23-05

## CERTIFICATE OF SERVICE

I, ERIC WITHERSPOON, HEREBY CERTIFY THAT ON JUNE 23, 2005 I, FILED THE ABOVE DOCUMENT (REPLY TO RESPONDENTS ANSWER) WITH THE CLERK OF COURT BY REGULAR MAIL. I ALSO CERTIFY THAT ON JUNE 23, 2005 I HAVE ALSO CAUSED TO BE MAILED BY REGULAR MAIL ONE COPY OF THE FOLLOWING DOCUMENT TO THOMAS E. BROWN AT HIS PLACE OF EMPLOYMENT.

| | |
|---|---|
| THOMAS E. BROWN<br>820 N. FRENCH STREET<br>WILMINGTON, DELAWARE 19801<br>JUNE 23, 2005 | ERIC WITHERSPOON<br>SOUZA BARANOWSKI<br>POST OFFICE BOX 8000<br>SHIRLEY, MA 01464 |

*[signature]*

Eric Witherspoon W-63259
P.O. Box 8000
Shirley, MA 01464

Peter T. Dalleo
Clerk's Office
Delaware District Court
844 King Street, Lockbox 18
Wilmington, Delaware